464 P.2d 615

**STATE of Arizona, Appellee,**

v.

**Donald Ray BLOOM, Appellant.**

**No. 1905.**

Supreme Court of Arizona.

In Division.

Jan. 30, 1970.

Rehearing Denied March 3, 1970.

Vernon B. Croaff, former Public Defender, and Anne Kappes, Deputy Public Defender, for appellant.

Gary K. Nelson, Atty. Gen., and Carl Waag, Asst. Atty. Gen., for appellee.

UDALL, Justice:

Defendant, Donald Bloom, appeals from convictions on two counts of first-degree burglary for which he was given sentences of ten years to ten years and one day on each count, the sentences to run concurrently.

During the early morning hours of October 13, 1967, a police officer noticed that a window of a service station was broken and that a pile of tools were lying underneath the broken window. The officer found defendant inside the station lying underneath a panel truck. A search of the premises disclosed that a cigarette vending machine was broken into and the cash box removed. The officer searched defendant and found on his person a padlock, ballpoint pens with the name of McKee

Realty imprinted thereon, and a metal ring of two keys, together with numerous coins and a William Penn cigar. The officers also found in the service station a checkbook containing checks imprinted "McKee Realty."

Investigation at McKee Realty revealed that a backdoor had been forced open and a padlock removed; that a checkbook was missing from the office and that a desk had been forced open. Homer McKee, the owner of McKee Realty, identified the padlock, ballpoint pen and checkbook; and further testified that he kept William Penn cigars in his desk. McKee testified that he closed his office about 3:30 to 4:00 P.M. the preceding afternoon, October 12th, and did not return until 9:00 o'clock the next morning.

Defendant first contends that reversible error was committed when Officer Suttle, who investigated the McKee Realty burglary, testified as follows:

"Q Do you know the defendant in this action?

"A Several years ago I arrested him—"

The trial court denied defendant's motion for a mistrial because he had admitted in his opening statement that he had previously been convicted of burglary, a felony. Thereafter in his own testimony defendant admitted a prior conviction in 1964. It is apparent that when the jury was already informed that he had been arrested and convicted on another occasion his cause was not harmed by the disclosure that the witness was in fact the arresting officer in that case. If the witness was not in fact the officer that made the arrest,

there is nothing before the jury to so indicate. It was of course improper for the witness to testify as he did; but whether the error was reversible error depends upon whether prejudice resulted, i. e., whether it is reasonably probable that the verdict would have been different if the testimony had not been admitted. State v. Sianez, 103 Ariz. 616, 447 P.2d 874 (1968). In view of defendant's admission of prior arrest and conviction, twice during the trial, the testimony complained of could not have materially prejudiced his cause.

Defendant next contends the State's Instructions No. 2 and No. 5, which were given by the court, are erroneous as a comment on the evidence and because neither instruction is in hypothetical form.[1] It is argued that the instructions refer directly to the defendant, as did the instructions which were condemned in Lujan v. State, 16 Ariz. 123, 141 P. 706; and Gibbs v. State, 37 Ariz. 273, 293 P. 976, 74 A.L.R.1105. The *Lujan* instruction read as follows:

"In *this* case the intent with which *the* defendant *committed the act complained of* (stealing a cow) must be determined by you from all the evidence in the case." [Emphasis supplied]

The Gibbs' instruction was similarly defective:

"*This* evidence is for the purpose of showing the intent of the accused in the commission of *the crime charged* in *this* information."

The instructions given do not in any way compare with those condemned in *Lujan* or *Gibbs*. The condemned instructions refer to *this* case, *the* defendant, *the*

---

1. Note: Instructions 1 and 2 were read together as a single paragraph to the jury and so as to be seen in proper perspective, and printed together here.

(Nos. 1 and 2):
"Any person who enters a building, office, shop, store or garage with intent to steal the personal property of another of any value is guilty of burglary. The essence of burglary is entering a place with such larcenous intent, and the crime is complete as soon as entry is made, regardless of whether the intent thereafter was carried out. A theft is at least a circumstance to be considered with all of the other evidence in the case to determine whether or not at the time of entering the building, office, shop, store or garage the defendant already harbored the intent to steal."

act, *this* evidence, and *the* crime. The instructions complained of refer to *any person, a* theft and *a* burglary. The departure from the hypothetical in the instruction in question is so inconsequential that it could not have been prejudicial.

The conviction and sentence on Count II, relating to the burglary of the service station is affirmed. Defendant, however, raises another question pertaining solely to Count I, the burglary of McKee Realty.

■ Defendant contends that because the charge involving the burglary of McKee Realty is based entirely on circumstantial evidence, the court was obliged to give the usual cautionary instruction that the circumstances must not only be consistent with an inference of guilt but also inconsistent with any reasonable hypothesis of innocence. We have long been committed to this rule. State v. Tigue, 95 Ariz. 45, 386 P.2d 402 (1963). We are also constrained to agree with defendant's claim that the evidence is entirely circumstantial. His recent, exclusive, and unexplained possession of property stolen in the burglary presents a circumstance which tends to connect him with the crime. State v. Andrade, 83 Ariz. 356, 321 P.2d 1021 (1958). That he was caught red-handed burglarizing a service station in close proximity to the scene of the first burglary, may well be another circumstance connecting him with the crime. Still there was no direct evidence that he entered McKee Realty and it was therefore incumbent upon the court to give the cautionary instruction.

. ■ Since the case must be reversed and remanded for new trial as to Count I, involving the burglary of McKee Realty, we feel it appropriate to comment on one last issue raised by defendant. He questions whether the evidence is sufficient to support a guilty verdict of first-degree burglary. In order to be first-degree burglary it must have been committed in the nighttime i. e. between sunset and sunrise. The evidence indicates that it could have been committed anytime after 4:00 P.M. which was certainly before sunset. The

state offered not one shred of evidence to show the actual time the burglary was committed. If there is no evidence as to the time of the burglarious entry, it cannot be assumed that entry was made at night. State v. Hunter, 102 Ariz. 472, 433 P.2d 22 (1967).

Judgment affirmed as to Count II. Judgment reversed and remanded for new trial as to Count I.

LOCKWOOD, C. J., and HAYS, J., concur.