491 P.2d 457

**The STATE of Arizona, Appellee,**
**v.**
**Gerald Lynn LAWSON, Appellant.**
**No. 2289.**

Supreme Court of Arizona,
In Banc.

Dec. 10, 1971.

Gary K. Nelson, Atty. Gen., by Paul J. Prato, Asst. Atty. Gen., Phoenix, for appellee.

Wood, Platt & Jenson by Dennis D. Jenson, Coolidge, for appellant.

CAMERON, Justice.

This is an appeal from a conviction and judgment of robbery (§ 13–641 et seq., A.R.S.) in the Superior Court for the County of Mohave.

Only one question is presented for review: Was the sum of money found in a search of appellant's automobile after he was arrested obtained as a result of a lawful search and seizure?

The facts necessary for a determination are as follows. Appellant and his wife met a Mr. Bryant in a bar in Truxton, Arizona, on 7 June 1970. Mr. Bryant, who was traveling to Chicago, had $2,300 mainly in $20 bills with him—$1,500 hidden in his car trunk, $200 on his person, and $600 hidden in a different location in his car. Mr. Bryant bought appellant and his wife several drinks before he went to his motel room to rest. At approximately 6 p. m. appellant and his wife went to Mr. Bryant's motel room and asked Mr. Bryant to join them for dinner. After finding a nearby restaurant closed, they bought dinner at a grocery store and ate it in appellant's motel room. After dinner Mr. Bryant, an elderly man not in the best of health, went back to his motel room to rest.

Around 10 p. m. Mrs. Lawson went to Mr. Bryant's motel room and told him her husband (appellant) was very drunk and needed Mr. Bryant's assistance to get into bed. Mr. Bryant helped Mrs. Lawson get appellant into his room and laid him down on the bed; at which point Mr. Bryant was hit on the side of the head by a bottle swung by appellant, leaving Mr. Bryant somewhat stunned. Subsequently, Mr. Bryant was tied up with torn sheets and robbed of his cash (he had around $175 of the $200 left) and his car keys by appellant.

A short while later, Mr. Bryant broke free of his bonds and went to the motel office and reported the incident to the Mohave County Sheriff's Department by telephone. Approximately fifteen minutes later a deputy arrived and made a report of Mr. Bryant's story.

Later that same night (at approximately 12:30 a. m.) Officer Gregory V. Young of the Department of Public Safety observed appellant's vehicle around six miles east of Kingman, Arizona, on the highway coming towards Kingman. Officer Young testified that prior to observing appellant's vehicle, he had been notified by radio of a robbery in which some cash was taken. The Officer was also told that a 1961 white Cadillac with Florida License Number SWW–256—containing a white male approximately 30 to 35 years of age and a white female approximately 19 to 23 years of age—was seen in the area where the robbery occurred. This Florida license plate matched that of appellant's Cadillac. On direct examination, Officer Young testified as follows:

"Q Now, was this what originally called your attention to the vehicle, the license number?

"A No.

"Q All right, what was?

"A I was eastbound and I observed a— approximately a '60 or '61 Cadillac, white in color westbound which was left of center of the roadway at that time.

Assuming that this may have possibly been the car that they had called ahead on it, I turned around the car and turned westbound following the same and then noted the

license plate number being the same as they had called previously, also driving left on the center of the roadway."

After appellant got out of his automobile the Officer smelled the odor of intoxicants; he, therefore, gave appellant some objective tests and then placed him under arrest for driving while intoxicated. A radio check on appellant revealed that he was wanted for parole violation; consequently, he was also placed under arrest for parole violation. By then Officer Young had been joined by two other officers. Both Officer Young and one of the other officers noticed blood on appellant's shirt. At this time Officer Young called for a wrecker to pick up appellant's vehicle and at the same time asked one of the other officers to inventory the vehicle. It was during this inventory that $600 in $20 bills was discovered protruding from a disconnected heater hose or defroster hose. $117.50 was discovered behind the arm rest in the front seat.

Of the $2,300 Mr. Bryant had begun his trip with, $600 was found hidden in appellant's car and $1,500 still remained hidden in Mr. Bryant's car (found a short distance from where he had left it). Approximately $25 had been spent, and, when appellant checked into the jail on 8 June 1970, he was found to be carrying $177. The $117.50 discovered in a separate hiding place in appellant's car was the only money not primarily in $20 bills or larger denominations.

The key evidence in the case was the $600 discovered, without a search warrant, in appellant's car. Appellant made timely objections to the admission of this evidence, and the objections were considered and disallowed by the court at a hearing on a motion to suppress. At this hearing, and on appeal, the State asserts two separate grounds to justify the search:

1. There was probable cause to search the automobile.

2. The search was justified by the "inventory rule."

## WAS THERE PROBABLE CAUSE TO SEARCH THE AUTOMOBILE?

The United States Supreme Court in Chambers v. Maroney, 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419, 426 (1970) restated the rule that ". . . automobiles and other conveyances may be searched without a warrant . . . provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." See also Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Court of Appeals in State v. Bustamante, 11 Ariz.App. 129, 132, 462 P.2d 822, 825 (1970) held that "[a]n immediate necessity to search without a warrant exists where the object, such as an automobile, might shortly be removed or where there is probable cause to search." See also State v. Baca, 1 Ariz.App. 16, 398 P.2d 924 (1965).

There are three Supreme Court landmark decisions in searches of automobiles without warrants—Carroll, supra; Chambers, supra; and Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Carroll granted to law enforcement officials the right to make a warrantless search of an automobile, "if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure . . . ." 267 U.S. at 149, 45 S.Ct. at 283–284, 69 L.Ed. at 549. Carroll, supra, was expressly limited in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) and Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), to cases in which the officers had reason to believe the evidence was in the car and probable cause to search the car.

Chambers, supra, is important for at least two reasons. One, it extended Carroll, supra, in that it allowed warrantless searches of automobiles not only at the point at which the car was stopped on the highway, but at the police station. Also, at least

according to the lone dissenter in the case, Mr. Justice Harlan, it is the first Supreme Court case to clearly state that Carroll authorizes a search of an automobile stopped upon the highway not only for contraband, but also "for evidence of crime, without a warrant, in every case where probable cause exists." 399 U.S. at 62, n. 7, 90 S.Ct. at 1987, n. 7, 26 L.Ed.2d at 435, n. 7.

The present case comes within Carroll, supra, as interpreted by Chambers, supra, since the evidence clearly indicates that there was probable cause for Officer Young to believe that the stolen $20 bills were in the car. The only conceivable objection to this conclusion comes from the third of the trinity of automobile search cases, Coolidge, supra. A careful reading of Coolidge does indeed show that it limits Carroll and Chambers in one respect: It does not allow a warrantless search of an automobile sitting in the suspect's driveway. But the court in Coolidge, supra, carefully distinguished that situation from the Carroll and Chambers problem:

> ". . . [I]t seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose." 403 U.S. at 463, n. 20, 91 S.Ct. at 2036, n. 20, 29 L.Ed.2d at 581, n. 20.

Thus, on the open highway at least, Chambers and Carroll, supra, are still good law. We find that the present search came clearly within the rule of Carroll and Chambers and we have no alternative but to affirm the trial court's holding.

### WAS THE SEARCH JUSTIFIED BY THE INVENTORY RULE?

Since we have held that the money was obtained through a valid search, there is no need for us to decide whether the police could justify obtaining the evidence merely through "inventorying" the car. See Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967); Heffley v. Hocker, 420 F.2d 881 (9th Cir. 1969); Heffley v. Hocker, 399 U.S. 521, 90 S.Ct. 2236, 26 L.Ed.2d 780 (1970); Heffley v. Hocker, 429 F.2d 1321 (9th Cir. 1970); and Mozzetti v. Superior Court of Sacramento County, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971).

Judgment affirmed.

STRUCKMEYER, C. J., HAYS, V. C. J., and UDALL and LOCKWOOD, JJ., concur.