618 P.2d 624

STATE of Arizona, Appellee,

v.

Monte Ray BROOKS, Appellant.

No. 1 CA–CR 4299.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 9, 1980.

Rehearing Denied Oct. 9, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Martin & Feldhacker by Gregory H. Martin, Phoenix, for appellant.

## OPINION

O'CONNOR, Judge.

Appellant, Monte Ray Brooks, was convicted of armed robbery following a trial by jury, and sentenced to serve 21 years in the Arizona State Prison. A timely notice of appeal was filed. On appeal appellant argues: (1) that the trial court erred in denying his motion to suppress his confession; (2) that the trial court erred in denying his motion to suppress physical evidence obtained at the time of the arrest of appellant; (3) that the trial court erred in denying his requested jury instruction on voluntariness; (4) that the trial court erred in denying his motion to dismiss for failure to comply with the provisions of rule 8, Rules of Criminal Procedure; and (5) that rule 8.6 is unconstitutional and the trial court misapplied rule 8.6, depriving appellant of his constitutional rights.

The evidence at trial reveals that in December, 1978, police officers were conducting a "stake–out" of a convenience market at a Taco Bell restaurant in Mesa, Arizona, when they observed two men wearing ski masks and heavy coats and carrying what appeared to be sawed–off shotguns enter the Taco Bell restaurant. Through his binoculars, one of the officers observed one of the individuals jump over the service counter in the restaurant and go to the back of the restaurant. Shortly thereafter, the individuals left the Taco Bell restaurant, running through a parking lot, an adjacent field, and towards a parking lot of an apartment complex north of the Taco Bell. The officer notified other police in the vicinity of the suspected robbery, and requested that they seal off all avenues of escape. He then headed in his own vehicle towards the

apartment complex. As he approached the apartment complex, he observed a faded, blue Ford Mustang, 1965 or 1966 model, northbound on the street which had access to the apartment complex parking lot. At that time the officer believed it was the vehicle which the robbery suspects were using. The vehicle was traveling approximately 40 to 45 miles per hour in a 25 mile per hour zone. The officer pursued the blue Mustang and radioed to other patrol units in the area for assistance. Another officer joined in the pursuit and stopped the vehicle. Upon stopping the vehicle, the officers observed two white suspects seated in the front of the vehicle and one black suspect lying on the floor or on the rear seat, who had been previously out of the view of the officers. When the passenger from the front seat exited the vehicle, he was overheard to state, "They got us." The officers also observed a ski hat, gloves, and a nylon stocking in plain view on the front console, and a pile of coats in the back seat of the vehicle. The three suspects were arrested and booked, and the vehicle was impounded. A search warrant was obtained, and pursuant to the warrant, the officers searched the vehicle and discovered ski masks, sawed–off shotguns, heavy jackets, gloves, and cash and checks taken in the robbery.

## MOTION TO SUPPRESS CONFESSION

Appellant argues first that the trial court erred in denying his motion to suppress his confession. Following his booking, appellant was interrogated by the police. At the voluntariness hearing detective Casillas testified that he advised appellant of his rights on the evening of his arrest, and that appellant stated that he knew what his rights were. The officer further testified that appellant said that he would voluntarily answer questions, and that appellant did not ask to see or contact an attorney or a doctor. He stated he had advised appellant he was being charged with armed robbery at the Taco Bell, and that the purpose of the interrogation was to discuss the incident. Appellant, according to the officer, detailed the circumstances of the crime and admitted his involvement in the offense.

The officer also testified that defendant did not appear to have been drinking and he was coherent. Two days later, detective Casillas spoke to the appellant again, after giving him his *Miranda* warnings again. At the second interview, the officer stated that appellant reaffirmed his confession, and added some details to his original statement. The statements were not taped, nor would appellant agree to sign a written statement.

Appellant testified, on the other hand, that he did not confess to the crime, that he merely stated that he was physically present in the vehicle. He testified that he had been drinking heavily on the day of his arrest, that he had a urinary tract infection and needed medication, and had asked to see a physician regarding the medication. He testified that he asked several times to call his wife and his attorney after receiving his *Miranda* warnings, but he was not allowed to make any calls. He stated that upon his arrest he was stripped, searched, and thrown into a padded cell, wearing only underwear. He asserted that he was allowed to sleep briefly, and then was awakened, given a pair of pants and a shirt, and taken to the interrogation room. He also asserts that the interrogating officer lied about the pending charges and told him that he would be charged with murder, two counts of armed robbery, and assault with intent to commit murder.

Appellant asserts that the trial court abused its discretion in determining that the statements to police officers were voluntarily made. He also claims that the evidence was insufficient to show that the confession was freely and voluntarily made and that the state failed to establish that it was not the product of physical and psychological coercion.

Confessions are deemed to be *prima facie* involuntary and the burden is on the state to show that they were freely and voluntarily made, and were not the product of physical or psychological coercion. *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978). The trial court's determination of admissi-

bility of a confession will not be upset on appeal in the absence of clear and manifest error. *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (App.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 58 L.Ed.2d 500 (1978). If appellant requested an attorney and was not allowed to contact one, his confession was involuntary and should not have been admitted. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 The evidence on the circumstances of appellant's statements was conflicting. It is clear that the trial court believed the detective's testimony rather than appellant's testimony. The trial court's determination that the statements of an accused person to the police were made voluntarily will not be disturbed on appeal if it is supported by substantial evidence. *State v. Ramirez*, 116 Ariz. 259, 569 P.2d 201 (1977); *State v. Cobb*, 115 Ariz. 484, 566 P.2d 285 (1977). The determination of the trial court that appellant's confession was voluntarily made and was not the product of threats, force, or other coercive conduct is supported by substantial evidence. The court did not err in allowing the jury to hear evidence of appellant's confession.

## DESTRUCTION OF OFFICER'S NOTES

Appellant also argues that the trial court erred in denying his motion to suppress his confession because he was denied his right to due process of law by virtue of the fact that the police officer destroyed his notes taken during the interrogation. Appellant relies on *United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976), and *United States v. Harrison*, 524 F.2d 421 (D.C.Cir. 1975).

The interrogating officer testified that he had taken notes during the interrogation which he used to refresh his memory while preparing a departmental report. After the departmental report was prepared, he reviewed it for accuracy and found it correctly reflected the substance of the interviews with appellant. He then destroyed the notes, which he stated were substantially embodied in his report.

In *State v. Johnson*, 122 Ariz. 260, 594 P.2d 514 (1979), the Arizona Supreme Court declined to follow the Ninth Circuit and the Fourth Circuit in granting a new trial due to the destruction of an officer's notes. *See Killian v. United States*, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); *United States v. Covello*, 410 F.2d 536 (2d Cir. 1968), *cert. denied*, 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969). *But see United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976); *United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976); *United States v. Harrison*, 524 F.2d 421 (D.C.Cir. 1975); *United States v. Johnson*, 337 F.2d 180 (4th Cir. 1964).

 In *Johnson*, the court considered whether rule 15.4(a)(2), Rules of Criminal Procedure, had been complied with. 122 Ariz. at 271–72, 594 P.2d at 525–26. Rule 15.4(a)(2) provides that handwritten notes which are substantially incorporated into a formal report "shall no longer themselves be considered a statement." The comment to the rule indicates that the rule was promulgated in order to alleviate the problem of requiring officers and attorneys to retain every scrap of notes taken in a case and also to prevent cross-examination on "jottings" contained in a notebook. The comment underscores that the rule applies only when such notes have been substantially incorporated into a formal report "which itself qualifies as a statement." *State v. Woods*, 121 Ariz. 187, 589 P.2d 430 (1979). We find that there was sufficient evidence for the trial court to find that the interrogating officer complied with the provisions of rule 15.4(a)(2), and that his notes were substantially incorporated into the departmental report.

 The court in *Johnson* also considered whether the state had acted in bad faith and whether the defendant was prejudiced by the loss of the notes. 122 Ariz. at 271–72, 594 P.2d at 525–26. *See State v. Jefferson*, 126 Ariz. 341, 615 P.2d 638 (1980); *State v. Schilleman*, 125 Ariz. 294, 609 P.2d 564 (Sup.1980). We find there is no evidence of bad faith on the part of the state in the destruction of the notes and there is no evidence that appellant was prejudiced

thereby. Thus, the trial court did not err in denying appellant's motion to suppress his confession and in allowing the officer to testify at trial.

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

■■■■ For a second assignment of error on appeal, appellant urges that the trial court erred in denying his motion to suppress certain physical evidence obtained in the vehicle. He claims that the state failed to establish that the arresting officers had probable cause to stop the vehicle and to arrest the occupants, or reasonable grounds to make an investigative stop, and that the evidence was obtained in violation of appellant's rights under the fourth amendment to the Constitution of the United States. In *State v. Jarzab*, 123 Ariz. 308, 599 P.2d 761 (Sup.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980), the Arizona Supreme Court recently enunciated the standard for determining the validity of an investigative detention pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such cases, "[a]n investigative stop will be deemed reasonable where the officer demonstrates some basis from which the court can determine that the police were not arbitrary or harassing." *State v. Jarzab*, 123 Ariz. at 310, 599 P.2d at 763. *See also State v. Porter*, 26 Ariz.App. 585, 550 P.2d 253 (1976). Thus, even if the officer lacks probable cause to arrest, an investigative stop will be upheld where facts and circumstances warrant the stop, and the scope of the intrusion is reasonably related to the circumstances. On the facts of this case, the evidence in the record fully supports a finding that an investigative stop was warranted in connection with the robbery. The officer had just observed what he deemed to be a robbery taking place at a Taco Bell restaurant. At the time of his observation, he knew that other robberies had been committed in the area by a white man and a black man, and that a light, faded, blue, "boxy" type car was involved. He also knew that the other robberies had been committed by men wearing ski masks and carrying sawed–off

shotguns. He observed in this case two persons enter the Taco Bell restaurant carrying sawed–off shotguns and wearing ski masks, and saw them leave shortly thereafter, running northward. Even though the officer lost sight of the two suspects for approximately 30 seconds to a minute, immediately thereafter he saw a light blue 1965 or 1966 Ford Mustang traveling on a road adjacent to the apartment parking lot at a high rate of speed in a residential area. The vehicle was the only moving vehicle in the area. We find under the circumstances that the police officer's actions in following the vehicle and stopping it were more than reasonable. The scope of the intrusion was reasonably related to the circumstances. Upon seeing the occupants, and the ski hat, gloves, and nylon stocking, which were in plain view, there was probable cause for the arrest of the occupants for the robbery at the restaurant.

■■■■ Appellant asserts further that the subsequent search of the vehicle was unlawful. He claims that the search was warrantless. To the contrary, the police officers did not search the vehicle and did not seize any evidence from it until they had secured a search warrant based on probable cause. The only action of the police officers which could resemble a warrantless "search" occurred after the three occupants of the vehicle had exited and were told to lie down in front of the vehicle. One of the police officers noticed that there was a pile of jackets on the back seat of the car. The officer testified that he believed that another person may have been hiding under the pile, and he moved it to determine whether there was another person in the vehicle. In doing so, he saw two sawed–off shotguns. Since the officer suspected that an armed robbery had just been committed, his concern for his safety and the safety of the other officers, manifested by his moving the coats, was entirely reasonable under the circumstances. Moreover, there is probable cause to make a warrantless search of a vehicle when the officer has a reasonable belief, based on

facts known to him, that the vehicle contains contraband. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *State v. Lawson*, 107 Ariz. 603, 491 P.2d 457 (1971); *State v. Porter*, 26 Ariz. App. 585, 550 P.2d 253 (1976). In this case, there was substantial evidence that the arresting officers had probable cause to search the vehicle. We find no error.[1]

## INSTRUCTION ON VOLUNTARINESS

Appellant contends that the trial court erred in failing to give his requested instruction number 2, concerning the voluntariness of his confession. Appellant testified at trial that he was denied his requests for assistance of counsel and for medical aid during his interrogation, and that the interrogating officers had told him he would be charged with murder, armed robbery, and assault with intent to commit murder. Appellant requested that the following instruction be given concerning the issue of voluntariness of his confession:

> You must not consider any statements made by the defendant to a law enforcement officer unless you determine beyond a reasonable doubt that the defendant made the statements voluntarily.
>
> The defendant's statement is not voluntary whenever a law enforcement officer used any sort of violence or threats or any promise of immunity or benefit.
>
> In determining whether the statement was voluntary you should take into account all the circumstances surrounding the giving of the statement, including but not limited to the following:
>
> 1. whether the defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the statement;
>
> 2. whether or not the defendant was advised or knew that he was not required

to make any statement and that such statement could be used against him;

> 3. whether or not the defendant had been advised prior to questioning of his right to the assistance of counsel;
>
> 4. whether or not the defendant was without the assistance of counsel when questioned and when giving such statements.

Rather than giving the instruction requested by appellant, the trial court instructed the jury on voluntariness as follows:

> You must not consider any statements made by the defendant to a law enforcement officer unless you determine beyond a reasonable doubt that the defendant made the statements voluntarily.
>
> The defendant's statement is not voluntary whenever a law enforcement officer used any sort of violence or threats or any promise of immunity or benefit.

Appellant asserts that A.R.S. § 13–3988(A) specifically required the trial court to instruct the jury on voluntariness in accordance with his requested instruction number 2.[2] A.R.S. § 13–3988 provides in part as follows:

> A. In any criminal prosecution brought by the state, a confession shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and *shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.*

---

1. Although it was not argued in the trial court or on appeal, we note that a criminal defendant who asserts neither a property nor a possessory interest in an automobile in which he was a passenger at the time of a police search, nor an interest in the items seized, has no standing to suppress the evidence at trial since his fourth amendment rights are not violated. *Rakas v.*

*Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

2. A.R.S. § 13–3988 was formerly A.R.S. § 13–1599. No substantive changes were made when the section was transferred and renumbered by Laws 1977, Ch. 142, § 154.

B. *The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession,* including but not limited to the following:

1. The time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment.

2. Whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession.

3. Whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him.

4. Whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel.

5. Whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the factors indicated in paragraphs 1 through 5 of this subsection which are taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession. [emphasis added]

A.R.S. § 13–3988(B), from which the omitted portion of appellant's requested instruction is derived, does not expressly require that the jury be instructed on the various circumstances which are listed, but requires that the trial judge consider them in determining voluntariness. The only statutory requirement for a jury instruction on voluntariness is contained in A.R.S. § 13–3988(A). Appellant did not offer or request a jury instruction to the effect that it should give such weight to the confession as the jury felt it deserved under all the circumstances. The language of appellant's requested instruction would have told the jury to consider all of the circumstances surrounding the statements in determining whether they were voluntary, including

whether appellant knew the nature of the charge against him, whether he was advised of his *Miranda* rights, and whether he had assistance of an attorney when questioned. We hold that A.R.S. § 13–3988(B) does not require that an instruction be given to the jury incorporating all the listed factors to be considered by the trial judge.

It would have been better practice for the court to have included in the standard instruction on voluntariness the language from A.R.S. § 13–3988(A) that "the jury [shall] give such weight to the confession as the jury feels it deserves under all the circumstances." However, the failure to give such an instruction is not fundamental error when the defendant does not request it. *See State v. Cobb,* 115 Ariz. 484, 566 P.2d 285 (1977).

"A defendant is entitled to have the jury instructed on any theory of his case reasonably supported by the evidence, [citation omitted], but instructions need not be given if their substance is covered by other instructions given by the trial court." *State v. Melendez,* 121 Ariz. 1, 5, 588 P.2d 294, 298 (1978). At trial, appellant took the position that he never made a confession to the police and that he was not present at the commission of the offense. He also claimed to have been denied his right to counsel. The court gave the recommended jury instructions on the presumption of innocence and the state's burden of proof beyond a reasonable doubt on the credibility of witnesses, and on the effect of credibility of a prior conviction of a felony.[3] We find that the instructions which were given adequately instructed the jury concerning appellant's position that he was not present at the commission of the offense and that he did not confess.

However, the instructions which were given failed to inform the jury what effect it should give to the failure of the police to permit appellant to contact an attorney during his interrogation, if the

**3.** Recommended Arizona Jury Instructions, Criminal Standards 6 and 1, and Standards 5 and 5(a).

jury found such to be the fact. This theory of the defense was reasonably supported by appellant's testimony at trial. The appellant's requested instruction number 2, however, did not contain language of instruction as to the effect of a *denial of a request* by the defendant for counsel. The requested instruction merely stated that the jury should consider all the circumstances in determining whether the statement was voluntary, including whether the defendant was advised of his right to counsel, and whether he had assistance of counsel when he was questioned. It was not disputed at trial that appellant was advised of his right to counsel, and that he did not in fact have the assistance of counsel during his interrogation. The disputed question of fact at trial was whether appellant had requested the assistance of counsel during his interrogation and been denied it. Inasmuch as appellant did not request an instruction on the effect of the denial of a request for assistance of counsel, the failure of the court to give such an instruction is not fundamental error. *See State v. Cobb*, 115 Ariz. 484, 566 P.2d 285 (1977). Under all the circumstances in this case, including consideration of all of the instructions which were given, the arguments of counsel, and the overwhelming weight of the circumstantial evidence against appellant, we hold that he received a fair trial. *See Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979).

## SPEEDY TRIAL ISSUE

 Appellant contends that he was denied his right to a speedy trial in compliance with the provisions of rule 8, Rules of Criminal Procedure, and that, in any event, the provisions of the rule are unconstitutional. Appellant was arrested December 22, 1978, and was arraigned January 11, 1979. His trial began on July 6, 1979, 176 days after the arraignment. He was in custody from the time of his arrest until the trial. Rule 8.2(b), Rules of Criminal Procedure, requires the trial to begin within 120 days from the date of the initial appearance or within 90 days from arraignment, whichever is lesser. In this case the lesser period

was within 90 days of the arraignment, and the last day of trial was set for April 11, 1979. Appellant's motion for a continuance was granted on February 28, 1979, for 28 days, which made the new last day for trial May 9, 1979. Appellant moved for a second continuance of the trial. The court found extraordinary circumstances existed and that the delay was occasioned on behalf of the appellant. The court continued the trial for an additional 28 days, which made the new last day for trial June 6, 1979. Both of the continuances requested by appellant resulted in excludable time under rule 8.4(a).

 On April 17, 1979, the state was granted a 28 day continuance, which the court determined was based on extraordinary circumstances and that the delay was necessary in the interests of justice. The state argued that the delay was required because of the length and complexity of the hearing on the motion to suppress evidence and because the prosecutor would be outside of the state for approximately two weeks. The new last day for trial was determined by the court to be July 6, 1979. The trial court's exercise of discretion in determining whether to grant a continuance will not be disturbed absent an abuse of discretion by the trial court. *State v. Blodgette*, 121 Ariz. 392, 590 P.2d 931 (1979); *State v. Myers*, 117 Ariz. 79, 570 P.2d 1252 (1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). Appellant did not object to the continuance requested by the state and we do not find that the trial court abused its discretion in granting the continuance and in finding that extraordinary circumstances existed.

 On April 18, 1979, appellant filed a motion for change of judge for cause. The motion was heard by another judge and was denied on April 20, 1979. The delay of three days caused by the filing and determination of the appellant's motion for change of judge is excludable from the computation of time for speedy trial as a delay occasioned on behalf of the appellant. *State ex rel. Berger v. Superior Court*, 111 Ariz. 335, 529 P.2d 686 (1974). The delay

further extended the last day for trial to July 9, 1979.

The trial was set for July 5, 1979, and on that date the state moved for a continuance which the trial court granted for one day. The one day continuance was granted pursuant to rule 8.5(b), upon the trial court's finding that extraordinary circumstances existed; however, the trial court ordered that the time was not excludable. The trial commenced on July 6, 1979, and the jury was selected and the indictment was read. The court was recessed until July 9, 1979, at which time counsel for the appellant made a motion to dismiss the indictment against appellant claiming that the speedy trial requirement set forth in rule 8.2 had been violated. The trial court took the matter under advisement and ruled at the close of the trial that the rule had been violated, and that defendant was entitled to relief. Shortly after the trial court's ruling, the jury returned its verdict of guilty, and the trial court remanded appellant to the custody of the sheriff.

We agree with appellee that the trial court erred in holding that rule 8.2 was violated. The trial actually commenced three days prior to the last day for trial, as determined by application of rules 8.4 and 8.5. There was no violation of the Rules of Criminal Procedure insofar as the time limits are concerned.

██ Appellant is also entitled to a speedy trial by virtue of the United States Constitution, amendment VI, and the Constitution of the State of Arizona, art. 2, § 24. The factors to be considered under the United States Constitution are set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), as follows: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right by the defendant; and (4) the actual prejudice to the defendant. *State v. Soto*, 117 Ariz. 345, 572 P.2d 1183 (1977) (where a nine month delay was upheld); *State v. Canez*, 118 Ariz. 187, 575 P.2d 817 (App.1977).

██ In this case, the trial began within six months of appellant's arraignment.

Fifty–nine days of that time were delays caused by and on behalf of the appellant. No objection was made by appellant to the twenty–eight day continuance requested by the state. No actual prejudice to the defendant has been demonstrated. We hold that, on these facts, there was no violation of appellant's federal or state constitutional right to a speedy trial.

Appellant also contends that rule 8.6, Rules of Criminal Procedure, is constitutionally defective for failure to provide sanctions for a violation of the time limit referred to in rule 8.2(b) for defendants in custody. We do not reach this question because in this instance we have found no violation of the appellant's right to a speedy trial under the Rules of Criminal Procedure, or otherwise.

For the foregoing reasons, the judgment and sentence are affirmed.

EUBANK, P. J., and HAIRE, J., concur.